UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL RICHARD BURKE, | No. 2:21-cv-00734-EFB (SS) |
| Plaintiff, | |
| v. | ORDER |
| KILOLO KIJAKAZAI, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act. ECF No. 1. The parties' cross-motions for summary judgment are pending. ECF Nos. 11, 12 & 13. The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings in this action, including judgment, pursuant to 28 U.S.C. 636(c)(1). ECF No. 8. For the reasons provided below, plaintiff's motion for summary judgment is granted and the Commissioner's motion for summary judgment is denied.

**I.   Background**

On May 11, 2018, plaintiff filed an application for disability and disability insurance benefits under Title II of the Social Security Act (Act), alleging that he became disabled on

/////

/////

February 28, 2012.[1]  Administrative Record (AR) 15, 143-144.  Plaintiff alleged he was disabled due to depression, posttraumatic stress disorder (PTSD), chronic obstructive pulmonary disease (COPD), bilateral neuropathy, and an essential tremor.  AR 61, 143, 160.  Plaintiff's application was denied initially and upon reconsideration.  AR 83-86, 90-96.  A telephonic hearing was held before an administrative law judge (ALJ) on September 17, 2020, at which plaintiff was represented by counsel.  AR 30-42.  The ALJ issued a decision on October 5, 2020, finding that the plaintiff was not disabled.  AR 15-26.

At the hearing, plaintiff's attorney asserted that plaintiff "worked full time for 40 years. He broke down due to an extreme build-up of catastrophic personal problems. . . . Financially, he needed the money, but there was no way that he could continue with work.  He pursued

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 42 U.S.C. §§ 423(d)(1)(A), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The steps are:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id*.

significant psychological treatment . . . [but] it did not allow him to improve enough to return to employment." AR 33. Plaintiff testified that he was working as a senior technical architect in 2008 when he was laid off because he exceeded his allotted family leave in order to deal with his wife's diagnosis of Stage 4 cervical cancer. AR 34. For a period of time, he worked part-time. AR 34-35. In October 2011, his wife died. AR 35. In February 2012, his eldest daughter committed suicide. AR 35. Plaintiff "went out on full FMLA[2] after that." AR 35. In 2015, he attempted to drive for Uber, but quit because he didn't like going out of the house" and "didn't feel safe when I was driving." AR 36. He testified to ongoing problems with maintaining his house and hoarding. AR 36. Plaintiff testified that he regularly had "problems with anger" and had been prescribed a variety of medications over a five-year period. AR 37-39.

Vocational expert (VE) Connie Gillery testified that a person with the same age, education, and work experience as plaintiff, if limited to routine, repetitive tasks, could perform unskilled occupations such as checker, bag loader, and machine operator. AR 41. Ms. Gillery further testified that, if such a person had a "significant verbal altercation" at work once a month, he "would not be able to maintain [the job] long term." AR 41. Similarly, the VE testified that if the person would be off-task more than 15 percent of the time, or absent two or more times a month, he would not be able to maintain the identified jobs. AR 41.

The ALJ determined that plaintiff had not been under a disability during the period at issue, February 2012 through September 2018, finding as follows:

1. The claimant last met the insured requirements of the Social Security Act on September 30, 2018.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of February 28, 2012 through his date last insured of September 30, 2018.

3. Through the date last insured, the claimant had the following severe impairments: osteoarthritis; emphysema; posttraumatic stress disorder (PTSD), and depression.

/////

/////

---

[2] California's Family and Medical Leave Act.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform medium work except frequent push/pull bilateral legs and frequent not constant stooping, crouching, crawling, and climbing stairs, and occasional ladders and kneeling. He should avoid concentrated exposure to dusts, fumes, odors, gases or pulmonary irritants. He must avoid hazards such as unprotected heights and dangerous moving machinery. He is limited to performing routine, repetitive tasks with no more than occasional changes to the work setting; no more than occasional interruptions to the work routine, and he is limited to no more than occasional interactions with members of the public, coworkers, or supervisors.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born [in 1956] and was 62 years old, which is defined as an individual closely approaching retirement age.

8. The claimant has at least a high school education.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding of 'not disabled,' whether or not the claimant has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from February 28, 2012, the alleged onset date, through September 30, 2018, the date last insured.

AR 17-26.

## II.     Standard of Review

The court will uphold the Commissioner's decision that a claimant is not disabled if substantial evidence in the record supports the Commissioner's findings of fact and the Commissioner applied the proper legal standards. *Schneider v. Comm'r of the SSA*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

/////

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**III.    Claims**

Plaintiff claims that the ALJ made the following errors: (1) the ALJ erred in evaluating the medical opinions; (2) the ALJ erred in discrediting plaintiff's subjective symptom testimony; (3) the residual functional capacity for medium work is not supported by substantial evidence; and (4) the ALJ failed to include all plaintiff's limitations in his questions to the vocational expert.

**IV.    Analysis**

The court first considers plaintiff's claim that the ALJ improperly discounted his subjective statements about his mental symptoms and limitations. Plaintiff alleged disability based on depression and PTSD, among other issues, and testified that he had recurrent anger issues, interpersonal problems, difficulties with hoarding and home maintenance, and difficulty leaving his house during the relevant period.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See*, *e.g.*, *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990); *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief"). The Ninth Circuit has clarified that,

1   when discounting subjective testimony, an ALJ must provide "specific, clear, and convincing

2   reasons for doing so." *Wade v. Saul*, 850 F. App'x 568, 569 (9th Cir. 2021), citing *Lambert v.*

3   *Saul*, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

4       In evaluating whether subjective complaints are credible, the ALJ should first consider

5   objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341,

6   344 (9th Cir. 1991). If there is objective medical evidence of an impairment, the ALJ then may

7   consider the nature of the symptoms alleged, including aggravating factors, medication, treatment

8   and functional restrictions. *See id.* at 345-47. The ALJ also may consider: (1) the applicant's

9   reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2)

10  unexplained or inadequately explained failure to seek treatment or to follow a prescribed course

11  of treatment, and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th

12  Cir. 1996); *see generally* SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.

13  Work records, physician and third party testimony about nature, severity and effect of symptoms,

14  and inconsistencies between testimony and conduct also may be relevant. *Light v. Social Security*

15  *Administration*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own

16  observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot

17  substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

18      Here, the ALJ wrote that plaintiff's "allegations regarding the severity of his symptoms

19  and limitations is diminished because those allegations are greater than expected in light of the

20  objective evidence of record discussed below." AR 21. The ALJ next summarized the objective

21  evidence of physical limitations. AR 21-23. Turning to objective evidence of mental limitations,

22  the ALJ wrote:

23          The claimant's mental condition appears generally well controlled at
            least for simple routine tasks. *In November 2012, . . . he reported*
24          *being off [anti-depressants] since September 2012. He has not seen*
            *a psychiatrist since July 2012*[3]. . . . He was referred back to
25          psychiatric and he agreed.[4] Here, the claimant has depression, which

26      [3] Citing AR 361-362 (November 2012 treatment notes stating that plaintiff had not taken
27  anti-depressants since September 2012 or had psychiatric treatment since July 2012).

28      [4] Citing AR 362 (November 2012 treatment note stating that plaintiff was referred to

6

> was partially situational due to personal loss of family members. However, mental status notes reflect claimant as cooperative, with appropriate mood and affect and normal insight and judgment and being non-suicidal. Additionally, he has presented as alert and oriented as to time, place, and situation with no unusual anxiety or evidence of severe depression.[5] At the consultative mental evaluation, mental status examination is overall benign and claimant's activities of daily living are intact.[6] In June 2019, . . . he reported doing well.

AR 23 (emphasis added; some record citations omitted).

After evaluating the medical opinion evidence, the ALJ concluded: "The claimant's allegations are not entirely consistent with the objective medical evidence of record," citing "limited objective findings, ordinary and routine treatment, the gaps in treatment, [and] effective use of medication to control symptoms[.]" AR 24.

In his credibility analysis, the ALJ cited November 2012 treatment notes indicating that plaintiff had not seen a psychiatrist since July 2012 and agreed to resume psychiatric treatment. The ALJ did not mention in that analysis that, from August 2013 to October 2015, plaintiff attended weekly therapy sessions with psychologist Dr. Rosa di Lorenzo. AR 402; *see also* AR 18 (ALJ note that Dr. Di Lorenzo treated plaintiff for depression and PTSD), AR 393 (Dr. Richwerger note that plaintiff's last mental health visit was in 2015). When considering the objective evidence, the ALJ's credibility analysis ignored years of weekly therapy during the alleged period of disability.[7]

The ALJ also discounted plaintiff's subjective symptoms because he showed "no unusual anxiety or evidence of severe depression." However, in August 2018, plaintiff was treated for

---

"back to psych" and agreed).

[5] Citing AR 225, 347, 350, 362, and 411 (exam notes between 2012 and 2019).

[6] Citing AR 394-395 (2018 evaluation by psychologist Dr. David Richwerger).

[7] Dr. di Lorenzo opined that plaintiff's depressive symptoms "significantly decreased his overall level of functioning," including his ability to find work. AR 402. She opined that "it would have been hard for Mr. Burke to find employment and maintain it, given his difficulties with task completion, memory, sustained concentration, social interaction, and adaptation to different environments." AR 403. The ALJ discounted this opinion because it "does not sufficiently explain why claimant could not perform unskilled work with limited interaction occupations" as contemplated by the RFC. AR 24.

"severe major depression with psychotic features" that resulted in a "panic attack" when there was a "new person in [his] home." AR 416, 421. The ALJ did not mention this event, which occurred during the alleged period of disability.

Given objective evidence of mental impairment, the ALJ should have considered aggravating factors, medication, treatment, and functional restrictions due to mental symptoms. As to medication, the ALJ noted that plaintiff was "off anti-depressants since September 2012" and that "he stopped taking Zoloft and Wellbutrin" in June 2019. AR 23. The ALJ did not discuss what medications plaintiff was taking between late 2012 and September 2018 (the majority of the relevant period); rather, the ALJ noted two times plaintiff *stopped* taking medication for mental symptoms. The ALJ summarized but did not address plaintiff's hearing testimony that "[h]e has been on medication and indicated that some have been helpful after his daughter died but, after that, they did not." AR 21. As with plaintiff's history of therapy, the ALJ's discussion of plaintiff's medication for mental issues was cursory and incomplete.

While the ALJ discounted plaintiff's subjective symptoms due to "limited objective findings, ordinary and routine treatment, the gaps in treatment, [and] effective use of medication to control symptoms," his analysis barely mentioned plaintiff's years of weekly therapy; nor did it clearly describe gaps in treatment; nor did it meaningfully address plaintiff's use of psychiatric medication over a six-year period. In *Lambert*, the Ninth Circuit held that an ALJ's failure to "provide enough reasoning" in the credibility assessment to "meaningfully determine whether the ALJ's conclusions were supported by substantial evidence" was harmful error. 980 F.3d at 1270, (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014)).

The ALJ's analysis also includes boilerplate assertions discounting plaintiff's testimony based on a summary of the evidence, *e.g.*, "The claimant's allegations are not entirely consistent with the objective medical evidence of record to establish a more restrictive residual functional capacity than that found above." AR 24; *see also* AR 21 (plaintiff's "statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical evidence and other evidence."). The *Lambert* court held that an "ALJ's detailed overview of [a claimant's] medical history coupled with a nonspecific

8

boilerplate conclusion that her testimony was 'not entirely consistent' with her medical treatment . . . was not enough to satisfy the minimal requirements for assessing credibility." 980 F.3d at 1277-78; *see Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) ("We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [claimant's symptom] testimony where, as here, the ALJ never identified which testimony she found not credible, and never explained which evidence contradicted that testimony.").

In sum, the ALJ's explanation for discrediting plaintiff's testimony of debilitating mental symptoms is not legally sufficient under the *Lambert* standard. The undersigned finds reversible error on this basis. Plaintiff is entitled to summary judgment.[8]

### V.    Conclusion

With error established, the court has the discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

---

[8] The undersigned does not reach the remaining claims.

Here, the record as a whole is not adequate to conclude whether the claimant was, in fact, disabled during the relevant period and remand is appropriate.

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11) is granted;
2. The Commissioner's cross-motion for summary judgment (ECF No. 12) is denied;
3. Judgment is entered for plaintiff; and
4. This matter is remanded for further administrative proceedings consistent with this order.

Dated: September 12, 2022.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE